■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY WALKER, Appellant.—Judgment of Supreme Court, Bronx County (Martin B. Klein, J.), rendered September 28, 1983, convicting defendant, after jury trial, of burglary in the second degree and sentencing him as a second felony offender to 5 to 10 years' imprisonment, reversed, on the law, and the matter remanded for new trial.

The burglary giving rise to this conviction occurred on or about January 3-4, 1982. The sole evidence of defendant's guilt was that the police had found his fingerprints in the apartment. Police investigators concluded that access to the second-floor apartment had been attained through a bathroom window, after apparently unsuccessful attempts to gain entrance through a gated kitchen window which looked out on the fire escape. A set of 10 fingerprints, pointed downward, thumbs facing inward, was found on the tile wall below the window sill, some 2½ to 3 feet off the floor. Three partial prints lifted from this set were matched to defendant's fingerprints.

Defendant testified that he had been in the subject apartment on one occasion, sometime in August and September of 1981, at which time he painted the kitchen and the bathroom. The work took two days, of which the better part of five hours was spent doing the bathroom.

The apartment was rented at the time to the Fridays. Mrs. Friday testified that they had moved into the apartment in June of 1980 and moved out in March 1983. She stated that during that occupancy the only time the apartment had been painted was sometime in 1982, about six months after the burglary. She recalled that the work took about two weekends, plus some minimal work on one weekday, a day in which she took off from work and stayed home. Although she could not remember who had done the work, she did recall having seen the painter at the time of the painting. She also

testified that she had never seen defendant before the trial and had never let him into her apartment.

Mrs. Friday was recalled to the stand to rebut defendant's testimony that he had painted the bathroom during the summer of 1981. She testified that from August 1981 to April 1982 her husband was immobilized at home with a long-term disability resulting from a hip operation. She also testified that she was in the habit of washing down all the tile surfaces in the bathroom about every three weeks.

On summation defense counsel attempted to comment on the failure of the prosecution to call Mr. Friday as a witness to testify as to his continuous presence in the apartment during August and September 1981. However, he was cut off by the court, which instructed the jury that Mr. Friday's testimony would only have been cumulative of Mrs. Friday's testimony. At the conclusion of summations, the court denied a defense request to give a missing witness charge to the jury referable to the People's failure to call Mr. Friday as a witness.

Notwithstanding the trial court's opinion to the contrary, this case was based entirely upon circumstantial evidence, viz., the fingerprint evidence. The evidence was sufficient for the case to have gone to the jury without Mrs. Friday's rebuttal testimony as to Mr. Friday's presence in the apartment during August and September 1981. However, once her testimony was introduced, there was a plain question as to why the source of such evidence was, without explanation, Mrs. Friday rather than Mr. Friday. If the prosecutor's intention was to show, through Mrs. Friday's testimony, that Mr. Friday would have denied defendant's presence in the apartment during August or September of 1981, then such testimony was clearly hearsay. Testimony on this point by Mr. Friday would have been primary evidence, certainly neither trivial nor cumulative of his wife's testimony. Although defendant might not have been entitled to a missing witness charge, at the very least defendant should have been permitted under these circumstances to comment on the failure of the People to call Mr. Friday (People v Wright, 41 NY2d 172), a missing witness who must be considered to have been available to the prosecution at the time of trial (see, People v Brown, 34 NY2d 658, 660). The Judge's comment to the jury, that Mr. Friday's direct observations on this aspect of the rebuttal case would have been merely cumulative of his wife's hearsay testimony, was clearly prejudicial. Moreover, there was no basis in the record for concluding that Mr. Friday's

testimony would be consistent with his wife's hearsay testimony *(see, People v Wright, supra; People v Brown, supra).*

Defendant had a number of prior criminal convictions on his record. A pretrial *Sandoval* ruling limited the prosecution to inquiring with respect to only one of those prior felony convictions. Nevertheless, on cross-examination the prosecutor was permitted to question defendant's extensive use of aliases, false dates of birth and false Social Security numbers. These false identifications were obviously linked to the prior criminal convictions which the court had barred from use at trial in its *Sandoval* ruling. While there is no per se proscription in this department against such questioning on cross-examination *(People v Dowdell,* 88 AD2d 239, 253 [Sandler, J., dissenting]), the latitude with which the prosecutor may inquire into the prior use of aliases and false indentifications is a matter for close monitoring within the discretion of the Trial Judge *(People v Dowdell, supra,* at p 243 [majority opn]). The trial court here clearly foresook its discretionary responsibility in granting the prosecutor unlimited latitude in developing these false identifications on cross-examination, even after objection *(see, People v Sellars,* 74 AD2d 551, 552). The prejudice to the defense is manifest in the fact that defendant took the stand in reliance on the prior *Sandoval* ruling, which was then circumvented by the prosecution with the court's approval *(People v Davis,* 63 AD2d 948).

A trial more narrowly limited to the facts and allegations at issue might very well have resulted in conviction. However, the cumulative effect of the errors here discussed resulted in denying defendant a fair trial. "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." *(People v Crimmins,* 36 NY2d 230, 238.) Concur—Sandler, Carro, Fein and Milonas, JJ.

Kupferman, J. P., dissents in a memorandum as follows: It is clear that the defendant was in the apartment, not only by his concession but also because of the fingerprints. The only issue was whether the said fingerprints might have remained on the bathroom tile from the time the defendant allegedly painted in the summer of 1981 until the burglary in January 1982. This, as against the testimony of Mrs. Friday that she washed the tile surfaces about every three weeks.

In the face of the overwhelming evidence of the defendant's guilt, this court would reverse and remand for a new trial on the basis of a possibly erroneous statement by the Trial Judge that Mr. Friday's testimony would have been cumulative.

The *Sandoval* ruling did not limit inquiry as to the use of false names by the defendant. There was no limit on inquiry with respect to the giving of false information, provided it did not specifically refer to the crimes that may have been involved. The Trial Judge did monitor the situation with respect to the limit on cross-examination.

I would affirm.