People v McMillan (2020 NY Slip Op 03948)





People v McMillan


2020 NY Slip Op 03948


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

109009

[*1]The People of the State of New York, Respondent,
v
Mack McMillan, Also Known as Duey, Appellant.

Calendar Date: June 11, 2020

Before: Egan Jr., J.P., Lynch, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Timothy S. Brennan, Schenectady, for appellant.
David J. Clegg, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered September 2, 2016, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree and resisting arrest.
In September 2015, defendant was charged by indictment with criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree and resisting arrest based upon allegations that, on March 27, 2015, defendant sold cocaine to a confidential informant (hereinafter CI) and, on a separate occasion later that same day, possessed cocaine with the intent to sell it and, when police tried to arrest him, he fled, ultimately being apprehended with the assistance of a canine. Pursuant to a stipulation in lieu of motions, the People and defendant agreed to hold a suppression hearing. At the conclusion of the suppression hearing, defendant moved to suppress a positive identification by the CI, evidence obtained as a result of the arrest and statements made postarrest, all of which County Court denied. Following a jury trial, defendant was convicted as charged. He was thereafter sentenced, as a second felony drug offender previously convicted of a violent felony, to a prison term of nine years, followed by three years of postrelease supervision, on his conviction of criminal sale of a controlled substance in the third degree and to lesser concurrent terms of incarceration on the remaining convictions. Defendant appeals.
Defendant contends that his convictions are not supported by legally sufficient evidence and that the verdict is against the weight of the evidence because the People failed to prove that he was the individual involved in the transaction insofar as the CI did not testify and law enforcement did not witness the alleged transaction. Initially, defendant's legal sufficiency argument is not preserved, inasmuch as his motions for a trial order of dismissal were not specifically directed at the deficiency alleged on appeal (see People v Turner, 178 AD3d 70, 72 [2019]; People v Montford, 145 AD3d 1344, 1345 [2016], lv denied 29 NY3d 999 [2017]). "Nevertheless, in reviewing defendant's challenge that the verdict is against the weight of the evidence, [this Court] must determine whether each element of the charged crimes was proven beyond a reasonable doubt" (People v Turner, 178 AD3d at 72 [citations omitted]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Santana, 179 AD3d 1299, 1300 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 973 [2020]).
Eric Van Allen, a detective with the City of Kingston Police Department, testified that the CI had purchased cocaine from defendant on previous occasions. Van Allen testified that he was present when the CI made a controlled telephone call to defendant and arranged the time and location for a purchase of cocaine. Van Allen testified that the CI was given a recording device and marked buy money. Van Allen accompanied the CI to defendant's house, where the purchase was to occur, and observed the CI enter and exit defendant's house. While the purchase was occurring, Van Allen was able to listen by way of the recording device. Following the purchase, the CI turned over a substance that Van Allen tested, confirming it was cocaine. Van Allen testified that he was also present for another controlled telephone call between the CI and defendant during which another buy was arranged, this time for the purpose of arresting defendant. Van Allen accompanied the CI to the parking lot near where the buy was set to take place and explained that, while he and his surveillance team was observing an individual in the parking lot whom they believed was defendant, the CI on his own accord indicated to Van Allen that the individual in the parking lot was defendant. Then, Van Allen had the CI call defendant's phone number to confirm defendant's identity. The CI complied and, when defendant answered the phone, Van Allen radioed the team to arrest defendant. Van Allen testified that when two officers approached defendant and attempted to arrest him, he fled, ultimately being chased down with the assistance of a canine. Van Allen arrived at the scene of the arrest and observed cocaine, a cell phone and money that the officers found during a search of defendant's person. Van Allen testified that, on his person, defendant had the marked buy money, in addition to over $500.
The two officers who arrested defendant testified. The officers were in an unmarked police vehicle. One of the officers, who is the handler of the police canine, testified that he was wearing a black tactical vest with the word "sheriff" marked on the front pocket and on the back, and that he was also wearing his badge on top of the vest. The other officer testified that he was wearing a badge and police coat that had "police" displayed on it. Their testimony established that the officers exited the vehicle and informed defendant that they were the police, at which time defendant fled on foot. While pursuing defendant, the officers yelled to defendant to stop and that a canine would be released. Defendant ignored their calls and began to jump a chain link fence, but the canine latched onto and bit into defendant's leg before he could scale the fence. Defendant was secured in handcuffs and taken into custody. One of the officers testified that defendant then attempted to discard a plastic bag of what appeared to be cocaine and that, after searching defendant's person and immediate vicinity, the officer found a box cutter, a cell phone and money. A State Police forensic scientist testified that she conducted testing on both the substance purchased by the CI from defendant, as well as the substance found in the plastic bag that defendant attempted to discard during his arrest, and that both substances contained cocaine, which is a narcotic drug. The forensic scientist also testified that the weight of the cocaine that defendant had at the time of his arrest weighed more than one eighth of an ounce.
Based upon the foregoing, a different verdict would not have been unreasonable insofar as the jury could have reasonably found that the People failed to establish that defendant sold cocaine. However, the testimony established that Van Allen listened to the first controlled buy utilizing the recording equipment. The testimony also established that the cell phone that defendant had on his person at the police station was the same cell phone used to arrange both controlled buys. The testimony also established that, as defendant approached the location for the second controlled buy, the CI informed the police that he recognized the individual to be defendant, which was confirmed by the CI calling defendant's phone number and defendant answering the phone. After being chased by police and apprehended, the police found the buy money, cocaine and the cell phone on defendant's person. Additionally, defendant later admitted at the police station to possessing cocaine. Thus, according deference to the jury's credibility determinations, and after reviewing and weighing the evidence in the record in a neutral light, we are unpersuaded by defendant's contention that the verdict was against the weight of the evidence (see People v Small, 174 AD3d 1130, 1132 [2019], lv denied 34 NY3d 954 [2019]; People v Quintana, 159 AD3d 1122, 1126 [2018], lv denied 31 NY3d 1086 [2018]).
We are similarly unpersuaded by defendant's argument that County Court erred in determining that the CI's identification of defendant was not unduly suggestive. A pretrial identification procedure that is unduly suggestive violates due process and is therefore inadmissible (see People v Delamota, 18 NY3d 107, 117-118 [2011]; People v Quintana, 159 AD3d at 1126). Courts have found that a police-initiated identification procedure is not unduly suggestive where the identification was spontaneous and not prompted by the accompanying officer (see generally People v Hernandez, 159 AD3d 580, 580 [2018], lv denied 31 NY3d 1083 [2018]; People v Robinson, 121 AD3d 1405, 1408-1409 [2014], lv denied 24 NY3d 1221 [2015]). The People have the initial burden of establishing the reasonableness of a pretrial identification (see People v Delamota, 18 NY3d at 118; People v Smith, 122 AD3d 1162, 1163 [2014]).
At the suppression hearing, Van Allen testified that he waited with the CI in his car near the parking lot where the second controlled buy was to take place and that, when defendant entered the parking lot, he was alone. Van Allen testified that defendant matched the description the CI had given earlier and that, while he was radioing with the surveillance team and observing defendant, the CI on his own accord indicated to Van Allen that the individual in the parking lot was defendant. According to Van Allen, he then asked the CI to call defendant one last time to confirm defendant's identity. The CI complied and defendant answered the phone, at which time Van Allen instructed the arrest team to arrest defendant. Thus, even though the procedure to apprehend defendant was police-initiated, the CI identified defendant, with no prompting whatsoever from the police, as defendant was nearing the parking lot. Based on the foregoing, County Court properly denied defendant's motion to suppress the CI's identification insofar as the identification was spontaneous and not unduly suggestive (see People v Clark, 85 NY2d 886, 888-889 [1995]; People v Martinez, 267 AD2d 101, 101 [1999]).
We also disagree with defendant that County Court erred in finding that the police had probable cause to arrest him. "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been committed by the person arrested" (People v Scott, 174 AD3d 1049, 1050 [2019] [internal quotation marks, brackets and citations omitted]). At the suppression hearing, Van Allen testified that he overheard multiple phone calls arranging drug transactions. Testimony also established that Van Allen observed defendant, who matched the CI's previous description, as he left his residence, walked to the location where the controlled buy was to occur and answered the CI's confirmatory call while standing in the designated location for the controlled buy. Then, Van Allen gave the order to make the arrest. The police subdued defendant after he tried to flee, and defendant attempted to discard what appeared to be a bag of cocaine. The foregoing evidence sufficiently demonstrated that probable cause existed to arrest defendant (see People v Scott, 174 AD3d at 1050; People v Dorsey, 151 AD3d 1391, 1393 [2017], lv denied 30 NY3d 949 [2017]).
As for defendant's contention that County Court erred in failing to suppress his statements, he only alleges that the waiver of his Miranda rights was not knowing and voluntary because he was denied medical assistance for the canine bite he sustained. This contention is belied by the record, as a review of the video of the interview establishes that defendant was completely coherent throughout and willingly answered the police officer's questions. Defendant also did not appear to be in significant discomfort from the canine bite before, during or after the interview. Moreover, defendant did not request medical attention until approximately 10 minutes into his interview, at which time the interview immediately ceased and the officers called for medical assistance. Accordingly, County Court properly found that defendant knowingly and voluntarily waived his Miranda rights (see People v DeAngelo, 136 AD3d 1119, 1120 [2016]; People v Meissler, 305 AD2d 724, 725-726 [2003], lv denied 100 NY2d 644 [2003]).
Defendant's remaining arguments require little discussion. His contention that County Court erred in giving the consciousness of guilt jury charge is misplaced, as defendant was the one who requested such charge, over the People's objection. Defendant also challenges his sentence as unduly harsh and excessive claiming that the sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. This claim is unpreserved, as he failed to object during sentencing (see People v Pena, 28 NY3d 727, 729-730 [2017]; People v Bailey, 181 AD3d 1172, 1175 [2020]).
Defendant also contends that his trial counsel was ineffective; however, he alleges no specific deficiency other than stating that "if any issue raised herein is deemed waived, counsel was ineffective in failing to preserve the issue." To the extent that this statement serves to challenge trial counsel's failure to preserve defendant's legal sufficiency argument, such failure does not constitute ineffective assistance insofar as, even had defense counsel properly preserved the objection, such an argument would have been futile (see People v Laduke, 140 AD3d 1467, 1471-1472 [2016]). Considering that defense counsel made cogent opening and closing statements and appropriate objections, effectively cross-examined witnesses and generally pursued a sound trial strategy, defense counsel provided defendant with meaningful representation (see People v McCoy, 169 AD3d 1260, 1265-1266 [2019], lv denied 33 NY3d 1033 [2019]; People v Muller, 155 AD3d 1091, 1094 [2017], lv denied 30 NY3d 1118 [2018]). Similarly, to the extent that defendant seeks to challenge counsel's failure to lodge a constitutional objection to his sentence,[FN1] this did not deprive defendant of meaningful representation. To the contrary, counsel argued zealously during sentencing, apprising County Court of many of defendant's accomplishments. Additionally, County Court sentenced defendant to significantly less than the statutory maximum, despite his lengthy criminal history.
Finally, we note that, although County Court sentenced defendant to six years in prison, followed by three years of postrelease supervision, for his conviction of criminal possession of a controlled substance in the third degree, the uniform sentence and commitment form incorrectly indicates that the prison portion of this sentence is nine years. Although the judgment need not be disturbed, we remit for County Court to correct the error on this form (see People v Minaya, 54 NY2d 360, 364-365 [1981], cert denied 455 US 1024 [1982]; People v Miller, 172 AD3d 1530, 1532-1533 [2019], lv denied 34 NY3d 935 [2019]).
Egan Jr., J.P., Lynch, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted for entry of an amended uniform sentence and commitment form.



Footnotes

Footnote 1: We note that the attorney who represented defendant at sentencing was not the same attorney who represented him during the trial.